UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASHAUD ROBINSON-COOPER,

    Plaintiff,

v.

FITNESS INTERNATIONAL, LLC
d/b/a LA FITNESS,

    Defendant.

Case No. 24-11136
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION [16]**

---

Rashaud Robinson-Cooper, an African American former employee of LA Fitness, alleges that the company racially discriminated and retaliated against him and then wrongfully terminated his employment. (ECF No. 1.) Robinson-Cooper asserts claims against LA Fitness under Title VII, the Elliot-Larsen Civil Rights Act (ELCRA), 42 U.S.C. § 1981, and wrongful discharge in violation of Michigan public policy. (*Id.* at PageID.5–11.) But LA Fitness maintains Robinson-Cooper signed an arbitration agreement in his employment contract. (ECF No. 16.) So LA Fitness filed a motion to compel arbitration.[1] (ECF No. 16.) The motion is fully and adequately

---

[1] LA Fitness previously filed a motion to compel arbitration. (ECF No. 6.) At that time, there were two pending Michigan Supreme Court cases relevant to Robinson-Cooper's case. Because those cases could have impacted the Court's analysis of his claims, it denied LA Fitness' motion to compel without prejudice and stayed the case pending resolution of those cases. (ECF No. 13.)  After those cases were decided, the Court lifted the stay (ECF No. 15), and LA Fitness filed its renewed motion to compel (ECF No. 16).

briefed (ECF Nos. 16–18), so the Court will decide it without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, LA Fitness' motion is GRANTED.

## I.

The Federal Arbitration Act (FAA) allows "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to ask a court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Before entering such an order, courts must answer four questions: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted . . . whether Congress intended those claims to be nonarbitrable"; and (4) "whether to stay the remainder of the proceedings pending arbitration" if only some of the claims are arbitrable. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). The Court addresses each in turn.

## A.

The first question is whether Robinson-Cooper and LA Fitness agreed to arbitrate. *Id.* "[T]he duty to arbitrate arises only from the party's consent. So parties cannot be forced into an arbitral forum unless they actually agreed to arbitrate. And courts must confirm that they did so before shipping the dispute to arbitration . . . ." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 843 (6th Cir. 2021). (citation omitted).

"To determine whether the parties agreed to arbitrate the dispute, courts may look beyond the four corners of the complaint and consider the arbitration agreement

itself as well as other evidence presented by the parties." *Rush v. United Wholesale Mortg. LLC*, No. 25-11355, 2025 WL 3459480, at *2 (E.D. Mich. Dec. 2, 2025) (citing *Memmer v. United Wholesale Mtg., LLC*, 135 F.4th 398, 404 (6th Cir. 2025)). A motion to compel arbitration will be denied only where "the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

LA Fitness "bears the initial burden to produce evidence sufficient to allow a trier of fact to conclude that the parties entered a contract to arbitrate." *Memmer*, 135 F.4th at 404. If LA Fitness does so, Robinson-Cooper must then "place the validity of the agreement at issue." *Id.* In other words he must provide "specific facts, as opposed to general allegations, that would allow a rational trier of fact to find that he did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Boykin*, 3 F.4th at 839 (quoting *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020)).

LA Fitness satisfies its burden. The motion to compel contains both the arbitration agreement at issue (ECF No. 16-2, PageID.282–301), as well as a declaration from Mindy Stokesberry, LA Fitness' Vice President of Human Resources. (*Id.* at PageID.273–281.) Stokesberry declares, "under penalty of perjury[,]" that the "documents in [Robinson-Cooper's] personnel file show he completed the Arbitration Agreement, affixed his signature to it, and acknowledged receipt of the Arbitration Agreement and Dispute Resolution Rules and Procedures." (*Id.* at PageID.280–281.) Stokesberry also explained the process by which Robinson-Cooper signed the

paperwork: once he logged into his account "after setting up his unique login credentials, the first task he was presented with was the review and execution of the Arbitration Agreement[,]" which he "had to complete" "before he could move on to any other onboarding task." (*Id.*) All told, LA Fitness' showing allows "a trier of fact to conclude that the parties entered a contract to arbitrate." *Memmer*, 135 F.4th at 404.

Robinson-Cooper attempts to challenge the validity of the agreement, which is governed by state law. *Tucker v. United Wholesale Mtg., Inc.*, No. 24-1595, 2025 WL 1082316, at *2 (6th Cir. Apr. 10, 2025). Michigan law provides that "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 830 (Mich. 2016) (citation omitted).

Robinson-Cooper maintains the agreement "lacks sufficient consideration and mutuality" and he did not "knowingly and voluntarily agree to arbitration." (ECF No. 17, PageID.346–349.) As to consideration, Robinson-Cooper argues that "continued employment alone is insufficient consideration for an arbitration agreement that is presented after the employee has already been hired." (*Id.* at PageID.346.) But "there is consideration; [the employee] signed the Arbitration Provision in exchange for the employment and benefits that came therewith." *Rush*, 2025 WL 3459480, at *3. And as to mutuality, Robinson-Cooper maintains that the arbitration agreement is "one-sided in practice, even if it appears mutual on paper" because "[e]mployees are far more likely to bring claims against employers (discrimination, harassment, wage-

and-hour violations) than employers are to bring claims against employees." (ECF No. 17, PageID.347.) But whether one party to a contract is "more likely" to sue than the other party does not render it non-mutual or invalid.

Finally, Robinson-Cooper argues that he did not "knowingly and voluntarily agree to arbitration." (*Id.* at PageID.348–349.) More specifically, he "has stated under oath that he has no recollection of seeing or signing the arbitration agreement." (*Id.* at PageID.348.) But "convenient memory lapses do not create factual disputes that are genuine," *Boykin*, 3 F.4th at 839–40 (collecting cases). Whatever Robinson-Cooper means by "under oath," he includes no evidence—not even an unsworn declaration— to put the validity of the agreement "at issue." *Memmer*, 135 F.4th at 404. And merely raising lawyer argument, as Robinson-Cooper has done here, will not cut it.

### B.

With the validity of the agreement established, the Court turns to the remaining questions. As to the scope of the arbitration agreement, Robinson-Cooper brings claims under Title VII, the ELCRA, 42 U.S.C. § 1981, and wrongful discharge in violation of Michigan public policy. (ECF No. 1, PageID.5–11.) These fall squarely within the arbitration agreement's broad scope, which covers "any and all legal disputes, controversies or claims" involving "employment or cessation of employment with" LA Fitness. (ECF No. 16-2, PageID.290 (expressly noting that the agreement covers claims under Title VII, 42 U.S.C. § 1981, and "state discrimination statutes, state statutes and/or common law" involving "employment termination.").)

Next, since Title VII and 42 U.S.C. § 1981 are "federal statutory claims[,]" the Court must determine whether "Congress intended those claims to be nonarbitrable." *McGee*, 941 F.3d at 865 (citation omitted). Congress did not so intend. *See Tucker*, 2025 WL 1082316, at *2 ("we have already held that arbitration agreements may cover Title VII claims") and *ShaZor Logistics, LLC v. Amazon.com, LLC*, 628 F. Supp. 3d 708, 713 (E.D. Mich. 2022) ("Congress did not intend § 1981 claims to be nonarbitrable.").

Finally, the Court must decide whether to stay the case pending arbitration if not all of the claims are arbitrable. Yet as with his federal claims, Robinson-Cooper's ELCRA claim is arbitrable, *see Tucker*, 2025 WL 1082316, at *2, as is his wrongful discharge claim, *see Monroe Cnty. Sheriff v. Fraternal Ord. of Police, Lodge 113*, 357 N.W.2d 744, 748 (Mich. Ct. App. 1984). So because all of the claims are arbitrable, the Court does not need to analyze whether to "stay the remainder of the proceedings pending arbitration." *McGee*, 941 F.3d at 865 (citation omitted).

## II.

The Court turns to Robinson-Cooper's remaining arguments. As to his ELCRA claim, Robinson-Cooper maintains that "compelling arbitration . . . would violate Michigan public policy." (ECF No. 17, PageID.349–352.) He argues that "[t]his Court should not compel arbitration while the Michigan Supreme Court is actively considering whether such agreements are enforceable." (*Id.* at PageID.350.) The Court declines that request.

For one, the Michigan Supreme Court has concluded its consideration of this issue. The primary decisions Robinson-Cooper relies on, *Rayford* and *Saidizand*, did not involve the enforceability of employment agreements mandating arbitration for ELCRA claims. Instead, *Rayford* involved a challenge to a provision in a boilerplate employment agreement that shortened the statute of limitation for employment discrimination claims from three years to 180 days. *Rayford* held that an "adhesive boilerplate employment agreement that shortens a limitations period must be examined for reasonableness." *Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 21-77754, at *1 (Mich. July 31, 2025). And the Michigan Supreme Court remanded the case in *Saidizand* in light of *Rayford*. *Saidizand v. GoJet Airlines, LLC,* 25 N.W.3d 676 (Mich. 2025). On remand, the Michigan Court of Appeals "reverse[d] the trial court's denial of defendants' motion for summary disposition with respect to plaintiff's ELCRA claims and remand[ed] to the trial court to grant the motion and dismiss the case." *Saidizand v. GoJet Airlines, LLC*, No. 355063, 2026 WL 942498, at *5 (Mich. Ct. App. Apr. 6, 2026). To the extent Robinson-Cooper reads these cases as casting doubt on "boilerplate employment agreements" more generally (ECF No. 17, PageID.343), the Court declines to take that unsupported leap. *See Rush*, 2025 WL 3459480 (addressing this same argument by the same law firm and concluding that the argument is an "unjustified leap" that has "nothing to do with the facts at issue"). That is, there is no basis to argue that a pending state court decision could impact the arbitrability of Robinson-Cooper's ELCRA claims under the FAA.

Robinson-Cooper makes one more argument from these state cases: the "arbitration agreement is an unconscionable contract of adhesion under *Rayford*." (ECF No. 17, PageID.341–346.) But again, *Rayford* was addressing adhesion employment contracts that contain a limitation on the statutory time to bring a complaint, not a challenge to an arbitration provision. Indeed, nowhere in *Rayford* does the word "arbitration" appear. *See Rayford*, 2025 WL 21-77754. And Robinson-Coooper makes no substantive argument as to why *Rayford*, which analyzed a wholly different employment contract provision, should be read to apply here where there is no issue concerning a statute of limitations period. Nor, in any event, does he show that the arbitration provision is unreasonable. So this argument fails as well.

Finally, having now reviewed the parties' arguments on their merits, the Court concludes that the FAA could displace any conflicting state court ruling regarding the enforceability of an arbitration agreement for ELCRA claims. *See Tucker*, 2025 WL 1082316, at *3; *Rush*, 2025 WL 3459480, at *4 ("So although Michigan may bar mandatory arbitration of ELCRA claims, federal courts could continue to authorize arbitration of such claims under the FAA.").

### III.

In its motion to compel arbitration, LA Fitness asks the Court to either dismiss the case or stay the proceedings pending arbitration. (ECF No. 16, PageID.266–267.) Because the Court finds that all of Robinson-Cooper's claims are subject to arbitration and he does not seek a stay (*see* ECF No. 17), the Court need not stay the case pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024) (holding that a case

must be stayed in this context when "a party has requested a stay of the court proceeding pending arbitration"). This result comports with the parties' agreement. (ECF No. 16-2, PageID.291 ("If either party files a lawsuit in court to resolve claims subject to arbitration, the parties agree that the Court shall dismiss the lawsuit and require the parties to arbitrate the dispute.").)

## IV.

For the reasons above, LA Fitness' motion to compel arbitration (ECF No. 16) is GRANTED and the case is DISMISSED.

IT IS SO ORDERED.

Dated: June 26, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE